IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHIRLEY WEERHEIM, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> J.R. SIMPLOT CO., INC. ) <br> ) <br> Defendant. ) <br> _____) | Case No. CV-05-20-E-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it defendant Simplot's motion for summary judgment. After hearing oral argument, the Court took the motion under advisement. For the reasons expressed below, the Court will deny the motion.

## BACKGROUND

Plaintiff Shirley Weerheim was employed by Simplot for 18 years at the Simplot mine near Afton, Wyoming. She was a senior dozer operator. In January of 2003, she maneuvered her dozer too close to another machine, and damaged her equipment. Simplot issued her a safety violation, suspending her for three days without pay.

Shortly after the suspension, Weerheim's husband, Shawn Weerheim, who

**Memorandum Decision and Order** - 1

was also employed at the mine, was on a Simplot bus with his wife's work crew. He overheard other work crew members refer to his wife as a "bitch" and express their desire "to get rid of the bitch." While work crew members have denied making these remarks, Shawn's recollection creates issues of fact that cannot be resolved in this summary judgment proceeding.

Shawn told his wife about the incident, and together they decided that he would report the incident, which he did to the mine manager, Dennis Facer. Although the incident was reported in January of 2003, no action was taken until May 6, 2003, just a few days before Weerheim was fired.

She was fired for driving her dozer into a blasting zone. On April 16, 2003, Britt Rasmussen, the acting Coordinator, drove Weerheim and Larry Teton, a Shovel Operator, to their equipment. They arrived about 5:30 a.m., while it was still dark.

Rasmussen knew that their work site was a blast zone where live explosives had been left overnight but he neglected to inform them of that fact. He relieved a guard at the site, but then left before Weerheim and Teton started work and without ensuring that any warnings existed on the site.

The evidence according to Weerheim is that when she started work, the site was dark and without warnings or a guard. Teton, who was Weerheim's

supervisor, directed her to dislodge some large rocks. She proceeded to the area as directed and noticed no warning signs. After she worked for a time, she was alerted by another worker that she was working in a blast zone. At the same time, the morning light revealed to her the explosives lying on the ground. She carefully backed her dozer out of the site.

Another employee reported the incident to the mine administrators who commenced an investigation. Weerheim filed a report stating that she had not been warned and that safety guidelines had not been followed.

A day after the incident, on April 17, 2003, Weerheim was suspended without pay. On May 1, 2003, Weerheim's counsel wrote a letter to Simplot complaining about the suspension and the failure of Simplot to take any action regarding the complaint filed concerning the bus incident. *See Exhibit 18 to Casperson Affidavit.* This letter contained a detailed description of the sex discrimination suffered by Weerheim, and suggested possible remedies.[1]

Eleven days later, on May 12, 2003, she was fired. Simplot cited safety violations as the reasons for the firing: "Essentially Weerheim was terminated . . . because she inappropriately entered a properly marked active blasting area when

---

[1] Taking just one portion of the letter as an example, it complains that "[a]ntagonism to Ms. Weerheim's presence on her assigned crew and her achievement as a dozer operator has been verbally expressed by numerous of her co-workers in the presence of Ms. Weerheim's husband and reported to the company to no avail."

**Memorandum Decision and Order** - 3

she was previously instructed by her Shift Coordinator to work in a different location while failing to communicate with either her Shift Coordinator or the blasters as to the status of the area she was entering in addition to failing to conduct an adequate inspection of the unknown area she was entering." *See Simplot's Statement of Facts* at ¶ 23.

Ms. Weerheim responded with this law suit, alleging the following claims against Simplot: (1) sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, and the Idaho Human Rights Act ("IHRA"); (2) unlawful retaliation; and (3) wrongful termination in violation of public policy.

Prior to filing her lawsuit, she filed a claim with the Idaho Human Rights Commission, who investigated the matter. The investigator concluded that there was no probable cause but issued a right to sue letter.

## ANALYSIS

1. **Summary Judgment Standard**

The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility determinations. *Id.* The trial judge

must determine whether the evidence presented is such that a jury applying the proper evidentiary standard could reasonably find for either the plaintiff or the defendant.  *Id.*

## 2. <u>Title VII Claim</u>

To avoid a summary judgment on her Title VII claim, Weerheim must make a *prima facie case* of discrimination by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) similarly situated men were treated more favorably, or her position was filled by a man.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).   The requisite degree of proof necessary to establish a *prima facie* case for Title VII discrimination on summary judgment is minimal and does not rise to the level of a preponderance of the evidence.  *Id*.

If Weerheim establishes a *prima facie* case, the burden shifts to Simplot to articulate some legitimate, nondiscriminatory reason for the challenged action.  *Id.* at 1064.  If Simplot does so, Weerheim must then show that the articulated reason is pretextual either through direct evidence of discriminatory intent or circumstantial evidence showing that Simplot's proffered explanation is unworthy of credence. *Id*.  If Weerheim relies on circumstantial evidence to show pretext, the evidence must be both specific and substantial. *Id.*

**Memorandum Decision and Order** - 5

Weerheim clearly satisfies the *prima facie* elements: She is a qualified female who was fired and replaced by a man. Simplot responds with a legitimate reason for firing her: She violated safety standards by driving her dozer into a blast zone. The burden thus shifts to Weerheim to raise a genuine issue of material fact that Simplot's reason is pretextual.

Weerheim satisfies her burden by pointing out that her supervisor, Larry Teton, was not reprimanded in any manner even though he directed her into the blast site. Likewise, Rasmussen was not reprimanded to any degree even though he failed to inform Weerheim and Teton of the blast site, sent home the guard, and then left himself without ensuring that any warning signs were placed at the site despite knowing that the work may begin in the dark.[2]

The conduct of Rasmussen and Teton – like that of Weerheim – put other employees at a serious risk of harm. Their disparate treatment is evidence that Simplot's stated rationale for Weerheim's firing is pretextual; otherwise, all would have been disciplined.[3]

---

[2] The Court recognizes that Rasmussen has testified that he only left because he saw the headlights of blasting employees arriving. But there is a disputed issue over when that arrival took place, at least raising a question whether he just left without ensuring that anybody would guard the site.

[3] While the parties argued whether the disparate treatment of supervisory employee Todd Wilkes is further evidence of pretext, the Court need not reach that issue. The evidence regarding Rasmussen and Teton is sufficient to satisfy the minimal standard for showing pretext in this summary judgment proceeding.

**Memorandum Decision and Order** - 6

Simplot argues that Weerheim's failure to inspect the work site trumps any failings by Rasmussen and Teton. However, Simplot's own safety system was one of redundancy, designed to place responsibility for safety at various levels so that if one failed, another would take over. If Simplot's primary interest was safety, it would hold accountable each person who failed, to ensure the system worked correctly the next time. That is why dumping all blame on Weerheim looks odd, and suggests pretext.

When the evidence is examined as a whole, the Court cannot find as a matter of law that Weerheim was not a victim of sexual discrimination under Title VII. Accordingly, the Court will deny the motion as to the Title VII claim.[4]

## 3.   **Retaliation Claim**

Under § 704 of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3 (2005).

---

[4] The IHRA analysis is identical, and hence summary judgment as to that claim must likewise be denied.

**Memorandum Decision and Order** - 7

Weerheim alleges that part of Simplot's motivation for firing her was to retaliate against her for complaining about incidents of sexual discrimination. To make out a prima facie case of retaliation, Ms. Weerheim must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a casual link between her activity and her termination. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951 (9th Cir. 2004). The burden-shifting structure of a retaliation claim is identical to that employed in analyzing a Title VII discrimination claim. *Id.*

Weerheim satisfies the first two elements because she alleges that she was fired for reporting an incident of sexual discrimination.[5] She satisfies the third element because just eleven days passed between her attorney's letter complaining of sexual discrimination and her firing. *Bell v. Clackamas County,* 341 F.3d 858, 865 (9th Cir.2003) (holding that "[t]emporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases").

Because Simplot's rebuttal once again raises the safety rationale, Weerheim

---

[5] Her attorney's letter, discussed more fully above, would constitute a protected activity under Title VII. *See O'Neal v. Ferguson Construction Co.,* 237 F.3d 1248, 1255 (10th Cir. 2001) (holding that letter from plaintiff's attorney complaining about discrimination constituted protected activity under Title VII); *see also Ray v. Henderson,* 217 F.3d 1234, 1240 n. 3 (9th Cir. 2000) (holding that informal complaint to supervisor constituted protected activity under Title VII).

**Memorandum Decision and Order** - 8

presents the same evidence of pretext, which is just as specific and substantial in the context of retaliation as it was in the context of discrimination. For these reasons, the Court will deny the motion as to the retaliation claim.

### 4. Wrongful Termination

Weerheim was an at-will employee. Thus, she can be fired for any reason that is not against public policy. She alleges that she was fired for reporting mine safety violations Court makes a two-part inquiry. "First, the Court asks whether there is a public policy regarding reporting [violations] sufficient to create an exception to the employer's right to terminate an at-will employee. Second, the court decides whether the behavior complained of is protected under the public policy exception, and whether a jury could reasonably find that [Weerheim] acted in a manner sufficiently in furtherance of that policy." *Thomas v. Medical Center Physicians, P.A.*, 61 P.3d 557, 564 (Id. Sup. Ct. 2002). "In order for the public policy exception to apply, the discharged employee must: (1) refuse to commit an unlawful act, (2) perform an important public obligation; or (3) exercise certain rights or privileges." *Id*.

Whether a particular action falls within the public policy exception is a question of law. *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 737 (Id. Sup. Ct. 2003). The Idaho Supreme Court has explained the exception by saying:

**Memorandum Decision and Order** - 9

> "The purpose of the exception is to balance the competing interests of society, the employer, and the employee in light of modern business experience. The public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges."

*Crea v. FMC Corp.*, 16 P.3d 272, 275 (Id. Sup. Ct. 2000) (internal quotation marks omitted). The exception has been extended to specifically protect (1) participation in union activities, *Roberts v. Bd. of Trustees*, 11 P.3d 1108, 1111 (Id. Sup. Ct. 2000); (2) reporting safety violations, *Ray v. Nampa School Dist.*, 814 P.2d 17 (Id. Sup. Ct. 1991); and (3) reporting false medical records and the performance of unnecessary operations, *Thomas v. Med. Ctr. Physicians*, 61 P.3d 557 (Id. Sup. Ct. 2002).

The Idaho Supreme Court has indicated that the exception would also protect against termination for refusing to date a supervisor, filing a worker's compensation claim, or serving on a jury, *Sorensen v. Comm. Tek, Inc.,* 799 P.2d 70, 75 (Id. Sup. Ct. 1990). In *Sorensen*, the Court stated that if the reported conduct constituted a statutory violation, it would be more likely fall under the protection of the public policy exception to the at-will doctrine. *Id.*

Here, Weerheim claims that by reporting mine safety violations (which led to her firing) she was performing an important public obligation pursuant to statute, the Mine Safety and Health Act [MSHA], 30 U.S.C. §§ 801-962.

**Memorandum Decision and Order** - 10

Moreover, she also claims that she was fired for reporting Title VII violations, and that this violates public policy as well.

With regard to the safety violations, Simplot argues that *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir.1984), held that a plaintiff could not allege a wrongful discharge claim based on being fired for reporting mine safety violations because such a claim was preempted by federal mining law. However, in *Olguin*, a case brought under Arizona law, the Circuit stated that "[plaintiff] mentions no specific Arizona statutes or policies." *Id*. at 1475.

Here, Weerheim cites Idaho Code § 47-1517, which requires Simplot to operate the mine "in accordance with all applicable statutes and regulations pertaining to . . . mine safety . . . ." This statute distinguishes *Olguin* and gives Weerheim a basis to argue that she was promoting a statutory Idaho policy in reporting safety violations of the MSHA. The Court will therefore deny the motion as to the wrongful termination claim.

**Memorandum Decision and Order** - 11

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED that the motion for summary judgment (Docket No. 15) is DENIED.

IT IS FURTHER ORDERED, that within ten (10) days from the date of this decision, counsel shall contact the Court's Clerk, LaDonna Garcia (208-334-9021) and schedule immediately a trial setting conference.  If counsel do not contact Ms. Garcia within the ten day period, she will set a trial date without their input.

IT IS FURTHER ORDERED, that pursuant to agreement of counsel, there is no sexual harassment claim in this case.

DATED:  **August 22, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order** - 12